**In re D, S & S ENTERPRISES, INC., d/b/a The Medicine Shoppe, Debtor.**

**D, S & S ENTERPRISES, INC., d/b/a The Medicine Shoppe, Plaintiff,**

**v.**

**Daniel A. SAKMAR and Daria M. Sakmar, Defendants.**

Bankruptcy No. 91–1986–BM.
Adv. No. 92–2477–BM.

United States Bankruptcy Court,
W.D. Pennsylvania.

June 23, 1993.

---

692

Michael J. Yurcheshen, Yurcheshen & Baggett, Pittsburgh, PA, for plaintiff/debtor D, S & S Enterprises, Inc., d/b/a The Medicine Shoppe.

John P. Vetica, Jr., Pittsburgh, PA, for defendant/Daniel A. Sakmar.

Mark J. Homyak, Wile, Georgiades, Homyak & Norkus, P.C., Pittsburgh, PA, for additional defendant/Daria M. Sakmar.

Mary Reitmeyer, Trustee, Pittsburgh, PA.

### *MEMORANDUM OPINION*

BERNARD MARKOVITZ, Bankruptcy Judge.

The complaint brought by debtor against defendant Daniel Sakmar consists of two counts. Count I seeks to recover in excess of $170,000.00 which Daniel Sakmar allegedly borrowed from debtor prior to the filing of the bankruptcy petition and has failed to repay. Count II seeks damages

for inventory, funds, and other estate assets which Daniel Sakmar allegedly removed from debtor's place of business subsequent to the filing of the bankruptcy petition.

Daniel Sakmar's trial testimony was offered in an inconsistent fashion. Initially he appeared to acknowledge the debt as loans from debtor-in-possession. When it became clear that this position was not a defense in Count I, he edged away from said position and described it as compensation in lieu of payroll. As neither position will change the result, we will treat Daniel Sakmar's legal argument to be that the debt was compensation in lieu of payroll. In support thereof, Daniel Sakmar points out that a court of competent jurisdiction previously determined that the funds in question constituted income for purposes of imposing support obligations upon him in a divorce proceeding. Daniel Sakmar also denies that he is responsible for the removal of the assets referred to in Count II of the complaint.

Daniel Sakmar has joined Daria Sakmar, his former spouse, as an additional defendant with respect to Count I of debtor's complaint. He maintains that a portion of the debt arising in Count I constitutes marital debt. Daniel Sakmar asserts that Daria Sakmar is jointly and severally liable to debtor for up to $130,000.00 of any debt he owes to debtor or, at the very least, that he is entitled to contribution or indemnity from her.

Daria Sakmar denies that the debt in question constitutes a marital debt for which she is liable.

Judgment in the amount of $250,069.25 will be entered in favor of debtor and against Daniel Sakmar. Daria Sakmar is *not* liable either to debtor or to Daniel Sakmar for any portion of the judgment which arises out of Count I of debtor's complaint.

# I

## FACTS

Debtor operates a retail pharmacy which has been in business since 1978.

Daniel Sakmar is a registered pharmacist. At all times relevant to this cause of action he owned ninety-nine percent (99%) of debtor's stock and was its sole officer. Additionally, he had exclusive control until January of 1992 over debtor's business affairs, including his draw, purchasing of inventory, and accounting procedures.

Daria Sakmar and Daniel Sakmar were married in 1982. They have three (3) minor children. Daria Sakmar has raised their children and had no involvement in debtor's operations until January of 1992.

The Sakmars maintained an opulent lifestyle during their marriage. The monthly mortgage payments on the marital residence, which was valued at more than $200,000.00, were in excess of $1,600.00. They also owned several automobiles, including a Lotus and a Corvette driven by Daniel, and leased a Cadillac Eldorado which Daria drove.

Their living expenses were paid with funds drawn from the business account maintained by debtor. Daniel wrote checks drawn on debtor's account to pay the family's bills, including mortgage and automobile payments, and also wrote checks payable to Daria from debtor's account which she then used to maintain the household. Daniel gave her as much as $2,000.00 per month for such purposes.

Daniel Sakmar obtained funds from debtor in either of two ways. He withdrew funds from debtor's account in the manner just indicated. These transactions were recorded on debtor's business ledger as "shareholder loans" and were listed as an asset of debtor. Also, Daniel Sakmar received payroll checks from debtor which were issued by a service which debtor retained for that purpose and for issuing W–2 statements for tax purposes.

Daniel Sakmar sometimes deposited his payroll checks into debtor's business account in partial repayment of the "shareholder loans". These deposits were recorded as such on debtor's business ledger.

The payroll checks were treated as income by Daniel Sakmar on his tax returns.

The "shareholder loans" were *not* treated as income.

The terms of repayment of the "shareholder loans" were not set forth in any written document. Daniel Sakmar, as sole officer of debtor, had complete discretion in determining such matters. As such, he determined that debtor would not assess interest upon the unpaid balance of these loans. The unpaid balance due and owing on the "shareholder loans" is $184,121.00.

Daria Sakmar commenced acrimonious divorce proceedings against Daniel Sakmar in state court on October 24, 1990. Her complaint sought alimony *pendente lite,* child support, and counsel fees.

Hearings on her claim against Daniel Sakmar were held before a court-appointed hearing officer in February and March of 1991. Two (2) issues pertaining to Daniel Sakmar's earning capacity were raised at the hearings. Daria Sakmar maintained that Daniel Sakmar's earning capacity was greater than the amount reflected on his W–2 statements. She asserted that the "shareholder loans" should be included in calculating his earning capacity. Daniel Sakmar argued that his earning capacity should be decreased "due to sour business conditions".

The hearing officer treated the "shareholder loans" as part of Daniel Sakmar's earning capacity and recommended that Daria Sakmar receive $3,412.00 per month in alimony *pendente lite* and an additional $3,122.00 per month in child support. Both sides took exception to the recommendations.

Debtor filed a voluntary chapter 11 petition on June 10, 1991. The bankruptcy petition and attached documents were signed by Daniel Sakmar under penalty of perjury in his capacity as debtor's president.

According to the bankruptcy schedules, debtor owns no real property and has no secured creditors or unsecured priority creditors. Schedule B–2, Personal Property, lists assets totalling approximately $280,000.00. Of that amount, $170,000.00 is described as "loans due from Daniel Sakmar and Daria Sakmar". Schedule C,

Unsecured Claims Without Priority, lists a total of $274,036.95 in general unsecured debt.

An order of court was entered in the divorce proceeding on July 10, 1991, directing Daniel Sakmar to pay $4,900.00 per month in unallocated alimony *pendente lite* and child support. The court determined that household expenses paid through debtor's business account were a reliable measure of Daniel Sakmar's cash flow and thus constituted an appropriate basis upon which to calculate his support obligations. The court also rejected Daniel Sakmar's argument that his earning capacity should be decreased because of deteriorating business conditions.

The state court reaffirmed its decision on October 23, 1991. It held that Daniel Sakmar's income was correctly measured by his cash flow and held that the debt of the business had been given due consideration. Daniel Sakmar appealed this order to the Superior Court of Pennsylvania.

The required monthly reports filed by debtor in this court for October and November of 1991 indicate an account receivable in the amount of $180,000.00 "due from officer". As has been noted, Daniel Sakmar was debtor's only officer. Both monthly reports had been signed under penalty of perjury by Daniel Sakmar in his representative capacity as debtor's president.

Matters in the divorce proceedings went from bad to worse for Daniel Sakmar.

The Sakmars' marital residence had been sold pursuant to order of the state court. The net proceeds realized from the sale were placed in an escrow account under the court's supervision. Daniel Sakmar was held in contempt of court and was incarcerated when he failed to make monthly payments to Daria Sakmar for alimony *pendente lite* and child support. The court directed that a portion of the escrow account be released to Daria Sakmar and that Daniel Sakmar return the funds to the escrow account at the rate of $10,000.00 per month. On November 8, 1991, Daniel Sakmar wrote a check on debtor's account in

the amount of $10,000.00, which funds were deposited in the escrow account. He was released from jail shortly thereafter.

His stay in jail in November of 1991 apparently had not convinced Daniel Sakmar of the necessity to pay alimony and child support. He was incarcerated again on January 3, 1992 for willful contempt of the order directing him to pay alimony and child support. The duration of his incarceration and how he obtained his release are not a matter of record in this case.

Daniel Sakmar, who was in charge of operating debtor, had not taken steps to ensure that a pharmacist would be on duty while he was behind bars. The only employee other than Daniel Sakmar with keys to the pharmacy had locked her keys inside and refused to have anything further to do with debtor. Debtor was not operating while Daniel Sakmar was in jail for the second time.

This court entered an order on January 8, 1992, authorizing Daria Sakmar to enter debtor's place of business, to take control of its operations, and to hire substitute pharmacists. She also was directed to conduct an inventory of the business in the presence of interested parties. Daniel Sakmar was temporarily enjoined from acting in any manner on debtor's behalf and was directed to furnish Daria Sakmar with the access code to debtor's in-store computer.

Daria Sakmar inventoried the merchandise at debtor's place of business upon gaining entry to the premises on January 8, 1992. The last previous inventory, which had been taken in November of 1991 when Daniel Sakmar was in exclusive control of debtor's operations, valued the merchandise on hand at that time at $89,395.00. The inventory conducted on January 8, 1992 valued the merchandise on hand at $38,446.75, a reduction of $50,928.25 from its value in November of 1991. Debtor's records indicate no reason which would account for the reduction in the inventory.

The hard disk to debtor's in-store computer was missing when Daria Sakmar gained access to the pharmacy. The disk contained the program needed to operate the computer as well as data pertaining to patients, doctors, insurance companies, etc. Daniel Sakmar had vindictively removed the disk so as to make it difficult, if not impossible, for anyone else to service debtor's customers.

Daria Sakmar promptly filed a motion in this court. An order was entered on January 10, 1992 permanently enjoining Daniel Sakmar from having any further involvement in debtor's operations and directing him to turn over to Daria Sakmar immediately all estate assets, including the hard disk, debtor's accounting records, and all of its funds.

Daniel Sakmar complied with this last order and reluctantly turned over the hard disk and the other assets to Daria Sakmar. However, the software and all data had been deleted from the hard disk. Debtor had to purchase another software package to run the computer. In addition, debtor had to reconstruct each patient's file as they came into the store to refill prescriptions. Debtor expended approximately $5,000.00 in replacing the software.

On July 27, 1992, the Superior Court of Pennsylvania affirmed the order issued in the divorce proceeding on October 23, 1991. *See Sakmar v. Sakmar*, 423 Pa.Super. 648, 616 A.2d 726 (1992).

An order confirming debtor's amended plan of reorganization was entered by this court on August 27, 1992.

Debtor brought the present adversary action against Daniel Sakmar on December 3, 1992. He in turn joined Daria Sakmar as an additional defendant on March 9, 1993.

Debtor had difficulty consummating its confirmed plan of reorganization because of the deplorable condition in which it had been left by Daniel Sakmar. The case subsequently was converted to a chapter 7 proceeding on June 2, 1993 upon motion by the largest unpaid creditor. Debtor did not oppose the motion. A chapter 7 trustee was appointed shortly thereafter.

Trial on the above-captioned adversary proceeding was held on June 7, 1993. All parties thereto were given the opportunity to present evidence they deemed appropriate.

## II

## ANALYSIS

### A) *Count I.*

Debtor asserts in Count I of its complaint that the sum of $184,121.00 listed in its books as a "shareholder loan" to Daniel Sakmar constitutes an unpaid loan which it now seeks to recover with interest.

Daniel Sakmar responds that the issue whether these transactions were loans was previously decided in the divorce proceedings where it was determined that the so-called "shareholder loans" were income for purposes of assessing support obligations. He further insists that the sum in question constitutes "compensation in lieu of payroll" and is not a loan. According to Daniel Sakmar, the transactions were listed as loans only for accounting purposes.

The point that Daniel Sakmar attempts to make by referring to the determination made in the divorce proceedings is not altogether obvious. He evidently is arguing that the determination by the state court somehow gives rise to *res judicata* or to collateral estoppel.

This argument is without merit. Neither *res judicata* nor collateral estoppel applies to the claim asserted by debtor in Count I.

■ Application of the claim preclusive aspect of *res judicata* requires a showing by Daniel Sakmar that:

(1) there has been a final judgment on the merits in a prior suit;

(2) involving the same parties or their privies; and

(3) there has been a subsequent suit based on the same causes of action.

*See U.S. v. Athlone Industries, Inc.,* 746 F.2d 977, 983 (3d Cir.1984).

■ The second and third elements required for *res judicata* are not present in this instance.

Debtor was neither a party to nor in privity with any party to the divorce proceeding. Daniel Sakmar and Daria Sakmar were the only parties to that action. Debtor is not in privity with either of them.

In addition, the present adversary action is *not* based on the same cause of action as was asserted in the divorce proceeding. The cause of action asserted by debtor in Count I of the present action is for recovery of an alleged unpaid loan to Daniel Sakmar. The cause of action asserted by Daria Sakmar in the divorce proceeding was for alimony *pendente lite,* child support, and counsel fees. The purpose of the proceeding as well as the issues litigated are clearly different.

■ Collateral estoppel applies where:

(1) the issue decided in the prior proceeding is identical to the one presented in the latter action;

(2) there was a final judgment on the merits in the prior proceeding;

(3) the party against whom the doctrine is asserted was a party to or is in privity with a party to the prior proceeding; and

(4) the party against whom it is asserted had a full and fair opportunity to litigate the issue in the prior proceeding.

*See Temple University v. White,* 941 F.2d 201, 212 (3d Cir.1991), *cert. denied sub. nom.; Snider v. Temple University,* —— U.S. ——, 112 S.Ct. 873, 116 L.Ed.2d 778 (1992).

■ The first, third, and fourth elements of collateral estoppel have not been met in this case.

The issue in the divorce proceeding was whether the so-called "shareholder loans" were to be included in Daniel Sakmar's earning capacity *for the purpose of determining the amount of his support obligation.* The issue raised in Count I of the present adversary action, by contrast, is whether the so-called "shareholder loans" constitute an unpaid obligation *for which Daniel Sakmar is liable to debtor.*

As already has been indicated, debtor neither was a party to the divorce proceeding nor is in privity with any party thereto. As a consequence, debtor did *not* have "a full and fair opportunity" in the divorce proceeding to litigate the issue raised in Count I of this proceeding.

■ It remains for *this* court to determine whether debtor is entitled to recover on its claim in Count I. The evidence adduced at trial overwhelmingly establishes that the so-called "shareholder loans" to Daniel Sakmar were just that—i.e., were loans—rather than "compensation in lieu of payroll". The fact that the loans enhanced his lifestyle does not change this result.

As has been indicated, these transactions were recorded in debtor's business records as loans. Daniel Sakmar had exclusive control over debtor's operations, including the manner in which these transactions were recorded.

Debtor's bankruptcy schedules and statements, which were signed by him under penalty of perjury in his capacity as debtor's president, listed those transactions as loans to Daniel Sakmar and as an estate asset.

The monthly reports by debtor for October and November of 1991, which Daniel Sakmar signed under penalty of perjury in his capacity as debtor's president, listed an account receivable in the amount of $180,-000.00 "due from officer". Daniel Sakmar was debtor's sole officer at the time.

Daniel Sakmar's tax returns did not treat receipt of these funds as income. If the transactions truly were "compensation in lieu of payroll", one would expect them to be treated as income for tax purposes.

The court is inclined to give considerable weight to these prior declarations against interest by Daniel Sakmar and to reject his insistence at trial that these transactions were never intended as loans. Statements by him that they were loans were made before it was in his interest to assert otherwise. The denial that they were loans must be rejected as self-serving. When it was in his interest to describe them as loans, Daniel Sakmar did not hesitate to do so. Now that it is in his interest to assert the contrary position, he denies that they are loans. He cannot have it both ways.

It must be concluded in light of the foregoing that Daniel Sakmar is liable to debtor for unpaid loans in the amount of $184,-121.00.

■ One final matter remains to be addressed regarding debtor's claim in Count I against Daniel Sakmar.

Debtor's prayer for relief in Count I includes interest in an unspecified amount on the unpaid balance of the loans. This request must be denied.

Counsel to debtor stated at trial that it would leave it to this court to determine the amount of interest to which it is entitled. Unfortunately, counsel provided no basis by which this court could arrive at such a determination.

The court, ever mindful of its duties, resorted to a decision-making device given to it by an acquaintance. The device provides several potential garden-variety answers to potential questions. The answers include "Perhaps", "I don't know", "Ask me later", "See your analyst", and "Fire someone". The court solemnly recited the proper incantation and spun the dial on the device, whereupon the arrow pointed to "Fire someone".

This answer, although significantly more illuminating than what has been provided, nonetheless provides no basis for determining what would be an appropriate award of interest. Accordingly, debtor's request for interest must be denied.

## B) *Count II.*

■ Debtor seeks in Count II to recover damages for merchandise, funds, and other assets which Daniel Sakmar allegedly removed from its place of business subsequent to the filing of the bankruptcy petition.

Daniel Sakmar denies that he was responsible for the removal of these assets.

As has been noted, debtor's inventory had decreased in value from $89,395.00 in November of 1991 to $38,446.75 on January 8, 1992, a significant decrease of $50,-948.25. Debtor's transactions, including sales, purchases, disbursements, and bank accounts, give no basis for this reduction. Daniel Sakmar controlled access to the store and the inescapable conclusion is that said inventory, or its proceeds, was taken

by him to be utilized in his soon-to-be-opened pharmacy.

Daniel Sakmar had been incarcerated for failing to make required alimony and child support payments. He withdrew the sum of $10,000.00 from debtor's account on November 8, 1990 in order to purge himself of contempt and shortly thereafter was released from jail.

The hard disk on debtor's in-store computer, which contained vital files pertaining to its customers, was missing when Daria Sakmar took control of debtor's operations on January 8, 1992. Daniel Sakmar was directed by this court on January 10, 1992 to return it immediately. He did so, but only after deleting the program required to operate the computer and all of the other files it contained. Debtor spent $5,000.00 to replace the software and expended considerable time and effort to reconstruct customers' records.

Daniel Sakmar was in exclusive control of debtor when these acts were committed. There is no indication that anyone else committed them. The only reasonable inference is that they were committed by Daniel Sakmar. He was obsessed with the desire to seek revenge against Daria Sakmar in retaliation for the unfavorable outcome of the divorce proceeding. One way of getting even with her, he apparently believed, was to destroy the source from which alimony and child support payments to her were derived.

The total amount of damage suffered by debtor as a result of Daniel Sakmar's actions is $65,948.25. The decrease in the value of debtor's inventory amounted to $50,948.25. Debtor spent $5,000.00 to replace software deleted by him. Also, he withdrew $10,000.00 from debtor's account on November 8, 1992 to get out of jail. ($50,948.25 + $5,000.00 + $10,000.00 = $65,948.25).

Accordingly, debtor will be awarded an additional $65,948.25 in damages for Count II of its complaint. The total amount of damages awarded to it on both counts of its complaint is $250,069.25 ($184,121.00 + $65,948.25 = $250,069.25).

## C) *Liability Of Daria Sakmar.*

■ One final matter must be addressed.

Daniel Sakmar has joined Daria Sakmar as an additional defendant in Count I of debtor's complaint. He maintains that some $130,000.00 of the loans from debtor were incurred while they were married and therefore constitute a marital debt for which she is jointly and severally liable to debtor.

The purported basis upon which Daria Sakmar also is liable to debtor in Count I is not clear. Daniel Sakmar has not bothered to cite to any authority for his claim and has left it to this court to figure out for itself whether Daria Sakmar also is liable.

The court has conducted its own research and has located the following statutory provision:

> In all cases where debts are contracted for necessaries by either spouse for the support and maintenance of the family, it shall be lawful for the creditor in this case to institute suit against the husband and wife for the price of such necessaries and, after obtaining a judgment, have an execution against the spouse contracting the debt alone; and, if no property of that spouse is found, execution may be levied upon and satisfied out of the separate property of the other spouse.

23 Pa.C.S.A. § 4102 (Purdon's 1991).

This provision does not apply to this case for several reasons.

The debt arising in Count I of the complaint was *not* "contracted for"—i.e., was *not* in consideration for—"necessaries ... for the support and maintenance of the family". Debtor did not provide the "necessaries" in question. They were provided by *other* parties and were paid for by Daniel Sakmar with funds borrowed from debtor. Daniel Sakmar merely borrowed money from debtor which he then used for the purpose of purchasing "necessaries" from *other* creditors.

Also, this provision permits the creditor with whom a spouse contracts for "necessaries" to bring suit against both spouses for the price of the "necessaries". The claim against Daria Sakmar has been

brought by Daniel Sakmar, not by a creditor with whom he contracted to provide "necessaries".

Daniel Sakmar has not shown any basis upon which Daria Sakmar may be held liable to debtor for a portion of the funds which he borrowed from debtor. Accordingly, he alone is liable to debtor in Count I of the complaint.

An appropriate order shall be issued.